UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| **ELIZABETH FRY FRANKLIN,** | : | **CIVIL ACTION NO:** |
| **SMALL FRY, LLC, CYNTHIA FRY** | : | |
| **PEIRONNET, and CYNTHIA F.** | : | |
| **PEIRONNET FAMILY, LLC** | : | |
| | : | |
| **VERSUS** | : | **JUDGE:** |
| | : | |
| **REGIONS BANK** | : | **MAGISTRATE JUDGE:** |

## COMPLAINT

NOW INTO COURT, through undersigned counsel come, Elizabeth Fry Franklin ("Franklin"), Small Fry, L.L.C. ("Small Fry"), Cynthia Fry Peironnet ("Peironnet") and Cynthia F. Peironnet Family, L.L.C. ("CFP Family LLC") (Franklin, Small Fry, Peironnet and CFP Family LLC are collectively referenced as "Plaintiffs") who request judgment as follows:

### I. JURISDICTION AND VENUE

1.

This is an action for declaratory, injunctive and monetary relief for damages. Jurisdiction is based on diversity of parties pursuant to 28 U.S.C. Section 1332. Venue is proper in the Western District as a judicial district within the state where the unlawful practices occurred.

### II. PARTIES

2.

Plaintiffs herein are:

a. Elizabeth Fry Franklin, is a person of the full age of majority and a female citizen of the United States and the State of Louisiana.

    b.        Small Fry, LLC, a Louisiana limited liability company with its principal place of business in Louisiana.  Small Fry has four (4) members: Elizabeth F. Franklin, who is domiciled in Louisiana; Lawrence Johnson Franklin, Jr., who is domiciled in Louisiana; Douglas Franklin, who is domiciled in Louisiana; Howard Franklin, who is domiciled in Tennessee; and, the Franklin Family Trust, which is domiciled in Texas.

    c.        Cynthia Fry Peironnet, is a person of the full age of majority and a female citizen of the United States and the State of Louisiana.

    d.        Cynthia F. Peironnet Family, LLC, a Louisiana limited liability company, with its principal place of business in Louisiana.  CFP Family LLC has two (2) members: Cynthia F. Peironnet, who is domiciled in Colorado and Charles Trenton Drane, who is domiciled in Louisiana.

3.

Made defendant herein is Regions Bank, an Alabama Corporation, with a principal place of business in Alabama, which may be served through its registered agent, Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, Louisiana 70802 ("Regions or Defendant").

<b><u>III. FACTUAL ALLEGATIONS</u></b>

4.

Plaintiffs collectively own an undivided two-thirds (2/3) of 1,805.34 acres of property located in Sections 23, 24, 25, 35 and 36, Township 15 North, Range 12 West and in Sections 29 and 31, Township 15 North, Range 11 West, all located in Caddo Parish, Louisiana (the "Property").

5.

On or about June 21, 2004, Plaintiffs executed a contract with Regions for it, "[t]o manage and supervise all said oil gas royalty and mineral interests, to do therewith what is usual and customary to do with property of the same kind and in the same locality...." and "[t]o execute acknowledge and deliver oil, gas and mineral leases containing such terms and provisions as the bank shall deem proper...."[1]

6.

On June 24, 2004, Regions executed that certain Oil, Gas and Mineral Lease in favor of Prestige Exploration, Inc. ("Prestige"), as recorded in Book 3703, Page 208, File No. 1935029 of the Conveyance Records of Caddo Parish, Louisiana (the "2004 Lease").[2]

7.

The 2004 Lease covers the Property and includes a primary term of three (3) years and has a twenty percent (20%) lessor's royalty. The 2004 Lease further includes a horizontal pugh clause and a depth severance clause.

8.

The 2004 Lease's horizontal pugh clause pertinently provides: "If lessee has completed a well (or wells) on the leased premises or on land pooled therewith that is producing or capable of producing oil or gas in paying quantities and is included within a pooled unit (or units) then this lease shall continue effect as to the lands covered hereby that is within the bounds of such unit (or units) but only to the depth specified herein."[3] The depth severance clause provides, "in each such

---

[1]  A true and correct copy of the contract is attached hereto as Exhibit A. *See,* paras. B and G.
[2]  A true and correct copy of the 2004 Lease is attached hereto as Exhibit B.
[3]  *See* Exhibit B, para. 7(a).

above case the acreage around such...well so held is to be limited from the surface to the depth of 100 feet below the stratigraphic equivalent of the deepest depth drilled..."[4]

9.

On or about September 24, 2004, Prestige assigned the 2004 Lease to Matador Resources Company ("Matador").

10.

Pursuant to the 2004 Lease, Matador conducted oil, gas and mineral development of the Property. Matador's development was, however, limited to development of depths down to and including the Cotton Valley formations and did not involve deep rights, including the Haynesville Shale formation.

11.

While Matador developed the Cotton Valley formation as to approximately One Thousand Six Hundred Thirty-Six and Thirty-Nine Hundredths (1,636.39) acres of the Property (the "Developed Acreage"), nearing the end of the primary term, One Hundred Sixty-Eight and Ninety-Five Hundredths (168.95) acres were still not included in producing units and, as such, the 2004 Lease would lapse as to this acreage per the horizontal pugh clause in the 2004 Lease (the "Undeveloped Acreage"). Further, per the included depth severance clause, even as to the Developed Acreage, all depths lying One Hundred (100) feet below the stratigraphic equivalent of the deepest depth drilled would likewise lapse.

12.

To allow Matador to continue development of the Undeveloped Acreage, Matador approached Regions and requested an extension of the 2004 Lease as to this acreage. The

---

[4] *See* Exhibit B, para. 7(d).

requested extension was only for the Undeveloped Acreage and should have been limited to the Cotton Valley formation.

13.

On or about August 22, 2007, Regions' employees, on behalf of Plaintiffs, executed an Extension of Primary Term (the "Extension") in favor of Matador, which, per the express language thereof, modified the primary term of the 2004 Lease from three (3) years to "Four (4) years and six months." Plaintiffs received a combined total of Eight Thousand Four Hundred Forty-Eight Dollars and No Cents ($8,448.00) for the Extension for their entire acreage or approximately Seven Dollars and No Cents ($7.00) per acre.

14.

Although Plaintiffs and Regions did not intend to extend the entire 2004 Lease, through inexcusable error, Regions did not place any limitation on the Extension so as to exclude other property not included with the Undeveloped Acreage. The remaining terms of the 2004 Lease remained unchanged.

15.

By Assignment, Bill of Sale and Conveyance with an effective date of June 6, 2008, Matador transferred its interest below the base of the Cotton Valley formation, being the depths below 9,680' in the Matador Production Company Dutton Family # 1 (API # 17-017-3363) Well to Chesapeake Louisiana, L.P. ("Chesapeake Assignment").

16.

In addition to obtaining Twenty Thousand Dollars and No Cents ($20,000.00) per acre, Matador reserved the rights down to and including the Cotton Valley formation as well as an

overriding royalty interest in the amount of the difference in lease burdens and Twenty-Five percent (25%), which as to the 2004 Lease is a Five percent (5%) overriding royalty interest.

17.

Once Regions' error was discovered, suit was filed to have the Extension declared null and void insofar as it extended the entire 2004 Lease and did not limit the Extension to the Undeveloped Acreage.

18.

Despite the pending litigation, on or about July 16, 2008, Franklin and Peironnet executed two (2) leases in favor of Petrohawk Properties, LP ("Petrohawk"). One lease covers the Developed Acreage (the "Large Petrohawk Lease") and the other lease covers the Undeveloped Acreage located in Sections 31 and 35 (the "Small Petrohawk Lease") (the Large Petrohawk Lease and the Small Petrohawk Lease are jointly referenced as the "Petrohawk Leases").[5]

19.

Other than the covered acreage, the Petrohawk Leases are identical in terms and provide for Eight Thousand Seven Hundred and Fifty Dollars and No Cents ($8,750.00) per acre in bonus and provide for a Twenty-Five percent (25%) lessor's royalty.

20.

The Petrohawk Leases contains the following pertinent provisions:

> Anything in this lease to the contrary notwithstanding, the parties further agree that for all purposes of this lease, the rights granted to Lessee are limited to those owned by Lessor, and Lessor makes no representation or warranty as to its title, or as to its ownership of any rights or interests in the premises... not even as to the return of the bonus money or the return of any other payments made to Lessor by Lessee.
> 
> ***
> 
> This lease and the Lessee's rights hereunder are expressly made subject to all rights-of-way, easements, roadways, reservations, leases, units, pooling agreements and

---

[5] True and correct copies of the Petrohawk Leases are attached hereto as Exhibit C in globo.

designations...now affecting the premises or use thereof whether recorded or visible on the ground.

21.

Less the fees deducted by Regions,[6] Plaintiffs each received Four Million Seven Hundred Seventy-Two Thousand Eight Hundred Four Dollars and Seventeen Cents ($4,772,804.17) for the Large Petrohawk Lease.

22.

Upon information and belief, Regions purportedly received payment attributable to the Small Petrohawk Lease in the amount of One Million Two Hundred Thirty-One Thousand Nine Hundred Thirty-One Dollars and Twenty-Nine Cents ($1,231,931.29). This amount was placed into a Regions' escrow account (the "Escrow Account"), but never paid to Plaintiffs.

23.

Unfortunately, on June 28, 2013, the Louisiana Supreme Court conclusively decided that the Extension was valid; therefore, the 2004 Lease was maintained as to all acreage and all depths. In its determination, the Louisiana Supreme Court concluded that the failure to properly limit the Extension was the sole fault of Regions' involved employees. *Peironnet v. Matador Res. Co.,* 2012-2292 (La. 06/28/13); 144 So. 3d 791.

24.

As demonstrated by the Louisiana Supreme Court's decision, Regions was solely responsible for the failure to limit the Extension to the intended Undeveloped Acreage and said failure was an "inexcusable error". *Id.* at 815.

---

[6] Regions deducted $ 537,063.33 from Mrs. Franklin and from Mrs. Peironnet, resulting in $1,074,126.66 in fees being charged/deducted for this transaction.

25.

If the Extension would have been properly drafted, Plaintiffs would have been able to execute a new lease without the cloud on title placed by the Extension, thereby resulting in a higher bonus amount.

26.

Further, but for Regions' failure to properly limit the extension, Plaintiffs would have also received at least a twenty-five percent (25%) royalty rate, as provided in the Petrohawk Leases.

## IV.  RELIEF

WHEREFORE, PLAINTIFFS REQUEST that judgment be rendered in their favor ordering DEFENDANT to pay PLAINTIFFS all amounts proven to be attributable to DEFENDANT'S improper actions in this matter with interest along with costs and attorney's fees as allowed by law;

FURTHER REQUEST DEFENDANT be ordered to provide an accounting of all amounts received attributable to PLAINTIFFS' mineral interests;

FURTHER REQUEST all orders and judgments necessary and proper for full just and equitable relief.

Respectfully submitted:

DOWNER, JONES, MARINO & WILHITE, L.L.C.


By:_____*/s/Allison A. Jones*_____

    Allison A. Jones (Trial Counsel)
    La. Bar Roll No. 16990

    Michael A. Marino
    La. Bar Roll No. 32572

    American Tower
    401 Market Street, Suite 1250
    Shreveport, Louisiana 71101
    Phone: (318) 213-4444
    Fax:    (318) 213-4445

-- Attorneys for Plaintiffs


**PLEASE SERVE:**

Regions Bank
*through its registered agent,*
Corporate Service Company
501 Louisiana Avenue
Baton Rouge, Louisiana 70802