UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **LIZABETH FRY FRANKLIN, ETAL** | **CIVIL NO. 5:16-1152 (LEAD)** |
| | **CIVIL NO. 5:17-1047 (MEMBER)** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **REGIONS BANK** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary [Doc. No. 124] filed by Defendant Regions Bank ("Regions") as to the claims of the Plaintiffs Elizabeth Fry Franklin ("Franklin") and Cynthia Fry Peironnet ("Peironnet"). Franklin and Peironnet filed an Opposition [Doc. No. 137] on February 16, 2021. Regions filed a Reply [Doc. No. 141] on February 23, 2021.

For the reasons set forth herein, Regions' Motion for Summary Judgment is DENIED.

**I.    BACKGROUND**

Franklin and Peironnet contracted with Regions for it to manage and supervise all oil, gas, royalty, and mineral interests as to Franklin and Peironnet's interest in an 1805.34 acre tract of land in Caddo Parish, Louisiana.

In 2004, Regions executed a three-year mineral lease for the property with a third party, who then assigned the lease to Matador Resources Company ("Matador"). The lease had a depth-severance clause, under which the lease would lapse after three years for all land 100 feet below the deepest depth drilled, even if the well was producing. Near the end of the lease term, Matador sought to extend the lease as to 168.95 acres for 18 months. Plaintiffs allege that Regions signed the lease renewal, but instead of an extension of only 168.95 acres, the extension extended the Plaintiffs' interest in the entire 1805.34 acre tract. Plaintiffs allege the extension

caused them millions of dollars in damages in lost lease bonus and royalties due to a cloud on Plaintiff's title.

Plaintiffs sued Matador in state court in an attempt to rescind or reform the lease extension. The state case went all the way to the Supreme Court of Louisiana, who upheld the lease extension and denied Plaintiffs' attempts to rescind or reform the extension. *Peironnet v. Matador Resources Co.*, 144 So.3d 791 (La. 2013).

On August 5, 2016, Franklin, Peironnet, Cynthia F. Peironnet Family, LLC, and Small Fry LLC[1] filed a Complaint [Doc. No. 1] against Regions, alleging that Regions' error in signing an improperly drafted lease extension violated their contract and caused Plaintiffs damages. Cynthia F. Peironnet Family, LLC and Small Fry LLC claims were dismissed with prejudice on February 24, 2021, leaving Franklin, Peironnet and Eleanor Baugnies de St. Marceaux ("Marceaux") as the remaining Plaintiffs in this proceeding.

The issue in Regions' Motion for Summary Judgment is whether Franklin and Peironnet released the claims against Regions through a waiver in the Agency Agreement.

## II.  LAW AND ANALYSIS

An Agency Agreement was entered into between Franklin and Regions on June 21, 2004 [Doc. Nos 1-2]. An Agency Agreement was entered into between Peironnet and Regions on December 4, 2001 [Doc. No. 124-2]. The language of the two Agency Agreements is identical.

Plaintiffs allege breach of contract of the following two provisions of the Agency Agreements:

> "B.  To manage and supervise all said oil, gas, royalty and mineral interests, to do therewith what is usual and customary to do with property of the same kind and in the same locality and to bring all ordinary and appropriate actions for the purpose of enforcing all

---

[1] Plaintiff Eleanor Baugnies de St. Marceaux filed an almost identical suit against Regions on August 27, 2017. The cases were consolidated.

>>claims which an agent with the powers conferred above would be entitled to bring for or on behalf of his principal."

>"G. To execute, acknowledge and delivery oil, gas and mineral leases containing such terms and provisions as the Bank shall deem proper, including the granting to the lessee the right to pool or utilize the land and interest owned by Owner for the purposes of mineral development with other lands and leases."

In maintaining Franklin and Peironnet had released their claims, Regions relies on the following exemplary clause found in paragraph I of the Agency Agreements:

>"The Bank shall never be individually liable or responsible to Owner for any loss, damage or injury sustained by reason or account of any mistake in judgment of the Bank occurring in connection with the exercise of these powers of attorney or that may be granted by any other power of attorney or delegation of authority to act; and Owner, to induce Bank to accept this appointment, hereby releases and forever discharges the Bank from any and all liability and responsibility for any and all such loss, damage or injury."

Regions argues in its motion that the actions of its employees in signing the lease extension for the entire acreage would be covered by the terms of the release language in the Agency Agreements.

In opposing Regions' motion, Franklin and Peironnet argue the exculpatory clause is ambiguous, that it violates Louisiana Civil Code article 2004 in waiving liability for "gross fault", that the exculpatory clause does not apply by its own terms, and that there is an issue of material fact (whether Regions committed "gross fault") which prohibits the granting of a summary judgment.

In its Reply, Regions argues the exculpatory clauses are not ambiguous, and that Franklin and Peironnet failed to plead claims for gross negligence and are therefore prohibited from arguing the applicability of La. CC article 2004.

3

### A. Summary Judgment Standard

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only

"when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### B. La. CC article 2004

Louisiana Civil Code article 2004 states:

"Art. 2004. Clause that excludes or limits liability

Any clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party.

Any clause is null that, in advance, excludes or limits the liability of one party for causing physical injury to the other party."

The specific language of La. CC article 2004 nullifies any clause that, in advance, excludes the liability of one party for "intentional or gross fault". There are no allegations by Franklin or Peironnet of intentional fault by Regions, so the issue becomes whether the allegations of fault on the part of Regions could be classified as "gross fault" under Louisiana law.

### C. Gross Fault

Plaintiffs' Complaint alleges that on August 22, 2007, Regions' employees, on behalf of Plaintiffs, executed an Extension of Primary Term in favor of Matador, which modified the primary term from 3 years to 4 years, 6 months, as to all of the Plaintiffs' interest in the 1,805.35 acre tract. (p.13). Plaintiffs further alleged that Regions, through "inexcusable error", did not exclude property not intended to be extended. (p. 14). The actions of Regions are referred to as "inexcusable error" (p.24), "failure to properly limit the extension", (p. 26), extension not properly drafted. (p. 25).

A reading of Plaintiffs' Complaint does not specifically allege "gross fault" or "gross negligence", but Louisiana is a "fact pleading" state that requires no technical forms of pleading. La. C.C.P. article 854. Additionally, a party may be granted any relief to which he is entitled as long as the facts pled gave the opposing party adequate notice of the existence of potential causes of action. *Cox v. W.M. Heroman and Co.*, 298 So.2d 848 (La. 1974).

In *Cameron v. Bruce*, 981 So.2d 204 (2nd Cir. 2008), the Court specifically held that the trial Court was wrong in failing to consider whether allegations constituted "gross negligence" under La. C.C. article 2004 where "gross negligence" was not specifically pled. This Court finds that Plaintiffs' allegations do not have to specifically plead "gross negligence" or "gross fault". The facts alleged are sufficient.

In addressing the term "gross negligence" under Louisiana law, the Supreme Court of Louisiana in *Ambrose v. New Orleans Police Dept. Ambulance Service*, 639 So.2d 216, (La. 1994) stated:

> "Louisiana courts have frequently addressed the concept of gross negligence. Gross negligence has been defined as the "want of even slight care and diligence" and the "want of that diligence which even careless men are accustomed to exercise." *State v. Vinzant*, 200 La. 301, 7 So.2d 917 (La. 1942). Gross

negligence has also been termed the "entire absence of care" and the "utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others." *Hendry Corp. v. Aircraft Rescue Vessels*, 113 F.Supp. 198 (E.D. La. 1953) (applying Louisiana law). Additionally, gross negligence has been described as an "extreme departure from ordinary care or the want of even scant care." W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts,* § 34, at 211 (5th ed. 1984); 65 *C.J.S. Negligence* §8(4)(a), at 539-40 (1966 & Supp. 1993). "There is often no clear distinction between such [willful, wanton, or reckless] conduct and 'gross' negligence, and the two have tended to merge and take on the same meaning." *Falkowski v. Maurus,* 637 So.2d 522 (La. App. 1st Cir.), *writ denied*, 629 So.2d 1176 (La. 1993) (quoting *Prosser & Keeton, supra*, at 214)). Gross negligence, therefore, has a well-defined legal meaning distinctly separate, and different, from ordinary negligence." 639 So.2d 216 at 219-220.

Additionally, the Court in *Houston Exploration Co. v. Halliburton*, 269 F.3d 528 (5th Cir. 2001), in examining "gross negligence" under Louisiana law stated:

> "Under Louisiana law, gross negligence is willful, wanton and reckless conduct that falls between intent to do wrong and ordinary negligence. We stated in *Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc.* that "[g]ross negligence is substantially and appreciable higher in magnitude than ordinary negligence." Other courts have defined gross negligence as the "entire absence of care", the "want of even slight care and diligence," and the "utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others." At least one Louisiana court stated that one is grossly negligent when he "has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." Mere inadvertence or honest mistake does not amount to gross negligence." 268 F. 3d 528, at 531-32

Regions cannot contract in advance to exclude grossly negligent conduct. Gross negligence is a fact intensive question that cannot be resolved pursuant to summary judgment. The question of whether Regions' conduct constitutes gross negligence is a material issue of fact that must be resolved by the trier of fact.

### III.  CONCLUSION

For the reasons set forth herein, Regions' Motion for Summary Judgment [Doc. No. 124] is DENIED.

MONROE, LOUISIANA this 1st day of March, 2021.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE