UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **ELIZABETH FRY FRANKLIN, ETAL** | **CIVIL NO. 5:16-1152 (LEAD)** |
| | **CIVIL NO. 5:17-1047 (MEMBER)** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **REGIONS BANK** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment As To The Claims of Eleanor St. Marceaux [Doc. No. 130] filed by Defendant Regions Bank ("Regions") which motion is hereinafter referred to as ("Regions MSJ") and a Motion for Partial Summary Judgment [Doc. No. 133] filed by Plaintiff Eleanor Baugnies de St. Marceaux ("Marceaux"), which motion is hereinafter referred to as ("Marceaux MPSJ").

To the Regions MSJ, Marceaux filed an Opposition [Doc. No. 143] on February 24, 2021. Regions filed a Reply [Doc. No. 150] on March 3, 2021.

To the Marceaux MPSJ, Regions filed an Opposition [Doc. No. 144] on February 25, 2021. Marceaux filed a Reply [Doc. No. 151] on March 4, 2021.

For the reasons set forth herein, the Regions' MSJ [Doc. No. 130] and the Marceaux MPSJ [Doc. No. 133] are both DENIED.

**I.     BACKGROUND**

Elizabeth Fry Franklin ("Franklin") and Cynthia Fry Peironnet ("Peironnet") contracted with Regions through separate Agency Agreements for Regions to manage and supervise all oil, gas, royalty, and mineral interests as to Franklin and Peironnet's interest in an 1805.34-acre tract of land in Caddo Parish, Louisiana. Marceaux did not have a written Agency Agreement with

Regions, but allegedly had an oral agreement with Regions to manage her mineral interests, including her undivided interest in an 1805.34-acre tract in Caddo Parish.[1]

In 2004, Regions executed a three-year mineral lease for the property with a third party, who then assigned the lease to Matador Resources Company ("Matador").  Marceaux also signed this mineral lease.  The lease had a depth-severance clause, under which the lease would lapse after three years for all land 100 feet below the deepest depth drilled, even if the well was producing.  Near the end of the lease term, Matador sought to extend the lease as to only 168.95 acres for 18 months.  Regions signed the lease extension on behalf of Franklin and Peironnet and allegedly advised Marceaux to sign the lease extension.  Plaintiffs allege that Regions signed the lease renewal, but instead of an extension of only 168.95 acres, the extension extended the Plaintiffs' interest in the entire 1805.34-acre tract.  Plaintiffs allege the extension caused them millions of dollars in damages in lost lease bonus and royalties due to a cloud on Plaintiffs' title.

Franklin, Peironnet and Marceaux sued Matador in state court in an attempt to rescind or reform the lease extension.  The state case went all the way to the Supreme Court of Louisiana, who upheld the lease extension and denied Plaintiffs' attempts to rescind or reform the extension.  *Peironnet v. Matador Resources Co.*, 144 So.3d 791 (La. 2013).

On August 5, 2016, Franklin, Peironnet, Cynthia F. Peironnet Family, LLC, and Small Fry LLC filed a Complaint [Doc. No. 1] against Regions, alleging that Regions' error in signing an improperly drafted lease extension violated their contract and caused Plaintiffs' damages.  On August 27, 2017, Marceaux filed an almost identical suit against Regions.  The cases have been consolidated.  Cynthia F. Peironnet Family, LLC and Small Fry LLC's claims were dismissed

---

[1] The 1805.34 acre tract is the same tract that Franklin and Peironnet also own an interest in.

2

with prejudice on February 24, 2021, leaving Franklin, Peironnet and Marceaux as the remaining Plaintiffs in this proceeding.

In the Regions MSJ [Doc. No. 130], Regions maintains it is entitled to summary judgment because the alleged oral agreement with Marceaux was required to be in writing under Louisiana law, and/or the oral agreement did not have sufficient corroboration. In the Marceaux MPSJ [Doc. No. 133], Marceaux asks for summary judgment alleging that a binding oral agreement existed between Marceaux and Regions. Since these two motions involve issues relating to the validity of Marceaux's alleged oral agreement with Regions, this Court can decide both motions in the same ruling.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact

3

by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### B. Writing Requirement

In the Regions MSJ [Doc. No. 130], Regions argues that Marceaux lacks an enforceable agreement with Regions because the agreement is required to be in writing. Marceaux maintains her allegation of an oral mandate is not required to be in writing.

**La. Civil Code article 2993. Form**

> The contract of mandate is not required to be in any particular form.
>
> Nevertheless, when the law prescribes a certain form for an act, a mandate authorizing the act must be in that form.

**La. Civil Code article 1839. Transfer of immovable property**

> A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath.
>
> An instrument involving immovable property shall have effect against third persons only from the time it is filed for registry in the parish where the property is located.

Regions argues since the transfer of an immovable (extension of the lease agreement) is required to be in writing, the mandate is also required to be in writing. Although that is a correct statement of Louisiana law, it does not apply to the facts of this case.

The lease extension was in writing and was signed by Marceaux. Marceaux is not alleging Regions signed the lease agreement on her behalf. She is alleging there was an oral agreement between she and Regions (a mandate) for Regions to advise her as to her mineral interests. Marceaux alleges Regions advised her to sign the lease extension when the lease extension description covered her interest in the entire 1805.34-acre tract rather than being limited to the 168.95 acres the extension was meant to cover.

5

This distinction is explained in *Woodward v. Steed* 680 So.2d 1320 (La. App. 2d.Cir. 1996). In *Woodward*, Steed was serving as Woodward's mandatary by oral agreement. Woodward had orally instructed Steed to try to find a buyer for an eight-acre tract in Bossier Parish which is now the Horseshoe Casino's riverboat and other facilities. Steed agreed to buy the property from Woodward, but before Steed purchased the property, Steed received an offer from Horseshoe Casino to purchase the property for double what Steed was going to pay for it. Rather than convey Horseshoe Casino's offer to Woodward, Steed ultimately purchased the property from Woodward then sold the eight acres to Horseshoe Casino. The Supreme Court of Louisiana found that Steed breached his fiduciary obligations to Woodward. In addressing the issue of whether the mandate was required to be in writing the Court found:

> Generally, a claim to a real right in an immovable must be made with the formality of a writing. La. C.C. art. 1839. See *Hayes v. Muller*, 245 La. 356, 158 So.2d 191 (1963), and *Ogden v. Ogden,* 643 So.2d 245 (La. App. 3d Cir. 1994). One cannot claim an interest in a real right and profits deriving from another's dealing with that real right by alleging a verbal agreement with the dealer to share in his dealings. *Ogden, supra*
>
> A claim based on the violation of a mandatary's duty to reveal material facts to his principal before buying his principal's property, however, is distinguished from the *Ogden* type claim. A mandatary who acts under an express mandate to sell cannot profit beyond what is due him under the contract even if the mandatary satisfies the principal's demands. See *Foreman v. Pelican Stores,* 21 So.2d 64 La. App. 2d Cir. 1944). A mandatary is not allowed to speculate for his own profit in handling his principal's affair. *Noe v. Roussel*, 310 So.2d 806 (La. 1975). The mandatary must disclose to his principal all facts relating to his principal's affair. *Robinson v. Thomason* 212 La. 186, 31 So.2d 734 (La. 1947).
>
> Unless the duty is dispensed with, the mandatary is required to account for his management. La. C.C. art. 3004. The mandatary must restore whatever he received by virtue of his procuration. La. C.C. art. 3005. The mandatary cannot take any advantage his position may give him to speculate for his gain. *Neal v. Daniels*, 217 La. 679, 682-683, 47 So.2d 44, 45 (La. 1950).

> This case does not question the validity of the transfer of the eight-acre tract of property either to Steed or to Horseshoe. See generally *Tedesco v. Gentry Development, Inc.,* 540 So.2d 960, 964 (La. 1989); *Hayes, supra; Ogden, supra*.
>
> Woodward asserts his claim on allegations of Steed's breach of his mandate and on fraud and lesion. We pretermit discussing fraud and lesion.
>
> In distinguishing *Hayes* from *Emerson v. Shirley*, 188 La. 196, 175 So. 909 (1937), the *Hayes* court said:
>
> As a basis for his allegations of fraud the plaintiff in the Emerson case argued that there existed between him and his vendee a fiduciary relationship to such an extent that the latter owed to him a duty (beyond that existing in the ordinary co-ownership relationship) to disclose pertinent facts about the property before purchasing his interest. The sole purpose of the introduction of the parole evidence was to show such fiduciary relationship and the resulting duty, and not that of enforcing an agreement so as to give him any benefits flowing therefrom.
>
> We think that the above discussion suffices to distinguish Emerson…
>
> *Hayes*, 158 So.2d at 201.
>
> Likewise, in this instance, Woodward is simply asserting, and has proved, that a verbal contract of procuration or mandate existed and was breached by his mandatary. Woodward's circumstances do not offend La. C.C. arts. 2992 and 1839.

Therefore, since the alleged mandate was to advise Marceaux as to her mineral interests, rather than to have authority to sign the mineral lease extension at issue, there was no requirement that the alleged mandate be in writing.

    **C.**     **Corroborating Circumstances**

Regions argues that even if the oral agreement between Marceaux and Regions were not required to be in writing, there are no corroborating circumstances to support the oral agreement in accordance with La. Civil Code article 1846.

7

**Louisiana Civil Code article 1846 states:**

> When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence.
>
> If the price of value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances.

Under Louisiana law, if an oral agreement is in excess of five hundred dollars, the oral agreement must be proved by at least one witness and other corroborating circumstances. To meet the statutory burden of proof under CC article 1846, a party may serve as its own witness, but the corroborating circumstances required may come from a source other than the party. The corroborating circumstances may be general and need not prove every detail of a party's claim. *Steve Owens Construction, Inc. v. Bordelon*, 243 So. 3d 601, 605 (La. App. 1st Cir. 2018); *Archaga v. Johnson*, 280 So.3d 331, 340 (La. App. 5th Cir. 2019); and *Morris v. Pratt* 38 So. 70, 71 (La. 1905).

Therefore, Marceaux's own testimony can serve as the "one witness", but corroboration from other sources is required. She has that also. The sworn affidavits by Marceaux [Doc. No. 133-2 Exh. B] by Carol Rushton [Doc. No. 133-3, Exh. C] and the videotaped deposition of Joseph E. Hand, Jr. [Doc. No. 133-3, Exh. D] provides ample corroborating evidence.

For the reasons set forth herein, Regions' MSJ [Doc. No. 130] is DENIED.

**D.    Marceaux MPSJ**

In the Marceaux MPSJ, [Doc. No. 133], Marceaux argues her Partial Motion for Summary Judgment should be granted in her favor as to the existence of a binding oral contract between Marceaux and Regions. Marceaux attaches her sworn affidavit and attachments [Doc. No. 133-2, Exh. B], the sworn affidavit of Carol Rushton [Doc. No. 133-3, Exh. C], and the

video deposition of Joseph E. Hand, Jr. [Doc. No. 133-3 Exh. D], in support. Marceaux also relies on language used by the Supreme Court of Louisiana in the state case *Peironnet v. Matador Resources,* 144 So.3d 791 (La. 2013).

Although this evidence certainly supports Marceaux's argument, her motion should be denied because Regions also has evidence supporting its position that there was no oral agreement. Regions attached excerpts from the Marceaux deposition [Doc. No. 144-1, Exh. A], (to show inconsistencies of the Marceaux testimony); the testimony of John Moore from the state trial [Doc. No. 144-1, Exh. H], (that Regions did not have an oral agreement regarding mineral management with Marceaux); and Carol Rushton's deposition [Doc. No. 144-1, Exh. D], (which said Regions did not manage Marceaux's minerals).

Additionally, Regions provided evidence supporting its argument that Regions did not advise Marceaux regarding the lease extension: Marceaux deposition testimony [Doc. No. 144-1, Exh. G] (regarding her discussions with Matador directly); Carol Rushton deposition testimony [Doc. No. 144-1, Exh. D] (that Rushton did not advise Marceaux about the lease extension); the testimony of Joey Hand [Doc. No. 144-1, Exh. I] (that he did not advise Marceaux about the lease extension); and arguments attaching documents contained in the Marceaux affidavit.

This Court is not allowed to weigh the evidence or to render credibility determinations in considering a motion for summary judgment. There exist material issues of fact as to whether Marceaux and Regions had an oral agreement regarding Marceaux's mineral interests and/or whether Regions advised Marceaux as to the lease extension at issue.

For the reasons set forth herein, the Regions MSJ [Doc. No. 130] is DENIED and the Marceaux MPSJ [Doc. No. 133] is DENIED.

9

### III. CONCLUSION

For the reasons set forth herein, the Regions MSJ [Doc. No. 130] is DENIED and the Marceaux MPSJ [Doc. No. 133] is DENIED.

MONROE, LOUISIANA this 8th day of March, 2021.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE