UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **ELIZABETH FRY FRANKLIN ET AL** | **CASE NO. 5:16-CV-01152** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **REGIONS BANK** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM OPINION

A bench trial was held in the above matter in Shreveport, Louisiana, on April 19-22, 2021, and a subsequent hearing was held on June 6, 2023, only on a royalty provision. At the conclusion of the hearing, the Court ordered parties to brief damages on the issues.

The Court hereby enters the following findings of fact and conclusions of law. To the extent that any finding of fact constitutes a conclusion of law, the Court adopts it as such. To the extent that any conclusions of law constitute a finding of fact, the Court adopts it as such.

These findings of fact and conclusions of law concern royalty damages due to Plaintiffs Elizabeth Fry Franklin and Cynthia Fry Peironnet ("Franklin and Peironnet").

**I.     FINDINGS OF FACT**

A Judgment [Doc. No. 208] was rendered in this matter on May 12, 2021, following the April 2021 trial. Plaintiffs[1] appealed [Doc. No. 210]. On July 6, 2022, a Judgment/Mandate [Doc. No. 221] was issued by the United States Court of Appeals for the Fifth Circuit, AFFIRMING IN PART, REVERSING IN PART, and REMANDING the remaining portion of the matter to this Court for resolution.

---

[1] Elizabeth Fry Franklin ("Franklin"), Cynthia Fry Peironnet ("Peironnet") and Eleanor Baugnies de St. Marceaux ("Baugnies").

1

The issue on remand is whether the remaining Plaintiffs,[2] Franklin and Peironnet, sustained damages as a result of the royalty rate in the 2004 Matador lease[3] versus the royalty rate in the 2008 Petrohawk lease.[4]

There is no dispute that the 2004 Matador lease paid a 20% royalty while the 2008 Petrohawk lease paid a 25% royalty rate. Due to the fault of Regions' employee, John Moore, Franklin and Peironnet did not receive the 25% royalty from Petrohawk because Petrohawk was unable to drill.[5] To determine whether damages were owed to Franklin and Peironnet, the issue centered on whether Exhibit "A" of the 2008 Petrohawk lease converted the lease from a "gross proceeds" royalty to an "at the wellhead" royalty.[6]

On October 3, 2022, this Court briefed that issue and found the terms of Exhibit "A" of the 2008 Petrohawk lease ambiguous, requiring a hearing to determine the intent of the parties.[7] That hearing was held on June 20, 2023 ("June 2023 hearing"). After the June 2023 hearing, this Court ruled[8] that the intent of the parties in adding Exhibit "A" to the 2008 Petrohawk lease was to create a "gross proceeds" royalty, which did not deduct post-production costs, except for severance and other applicable taxes.

---

[2] The dismissal of Baugnies' claim was affirmed by the Fifth Circuit.
[3] [Doc. No. 205-3]
[4] [Doc. No. 205-9].
[5] [Doc. No. 242 pp. 4-5]
[6] A "gross proceeds" royalty does not hold out costs for processing, compressing, and transporting costs, while an "at the wellhead" royalty does hold out those costs.
[7] [Doc. No. 242, pp. 13-15]
[8] [Doc. No. 305]

Additional briefing was then ordered by the Court to address the royalty damage issue.[9] In response to that original briefing, Plaintiffs filed a brief.[10] Defendant Regions filed a Response[11] and Plaintiffs filed a Reply.[12]

## II. CONCLUSIONS OF LAW

### A. Evidence Examined

Because the case was remanded to this Court to determine the royalty issue, this Court finds it will only consider the testimony previously presented at the April 2021 trial. The purpose of the June 2023 trial was to determine the intent of the parties regarding the Exhibit "A" of the 2008 Petrohawk lease. As noted in the August 17, 2023, ruling:

> No additional evidence or testimony will be allowed in making the damage determination. Arguments should be made by the parties based on the evidence and testimony previously submitted.[13, 14]

Therefore, the testimony resulting from the June 2023 hearing will only be used for the purpose of determining the intent of the parties as to the type of royalty in the 2008 Petrohawk lease. Plaintiffs argue in Reply that by a Scheduling Order issued on November 22, 2022,[15] the parties agreed to supplement expert reports. This Court intended on the introduction of expert reports for the purposes of the ambiguous provisions of the 2008 Petrohawk lease, not as to damages. This Court never allowed the introduction of supplemental reports as to damages after the April 2021 trial. As this Court found[16] the intent of the parties by the addition of Exhibit "A"[17] was to create a "gross

---

[9] [Id at 16]
[10] [Doc. No. 306]
[11] [Doc. No. 307]
[12] [Doc. No. 308]
[13] [Doc. No. 305 p. 16]
[14] Additionally, the intent of the parties was bifurcated from damages. [Doc. No. 288]
[15] [Doc. No. 258]
[16] [Doc. No. 305]
[17] [Exhibit Px-13]

3

proceeds" royalty with no deduction for post-production costs, except for severance and applicable taxes.

### B. Prior Testimony Regarding Royalty Damages

#### 1. Robert M. McGowen[18]

Robert M. McGowen ("McGowen") is a consulting petroleum engineer hired by Plaintiffs. He was accepted by this Court as an expert in petroleum engineering. McGowen used a five-sixth (5/6) interest in the property[19] to determine damages based on the difference between a 20% versus a 25% gross proceeds royalty. McGowen determined past royalty payments and estimated future royalty payments.

To determine past lost income, McGowen examined the well revenues from 2009 through 2017 by examining the wells' production history. McGowen estimated the lost royalty income from 2009-2017 to be $4,312,840.00.

To determine future royalties, McGowen used a performance analysis to estimate future production of the well. McGowen admitted the future production is an estimate and also depends upon the future price of gas. McGowen also admitted that he did not reduce the future royalty income by the present value. McGowen estimated the loss of future royalty income was $1,961,491.00.

Therefore, McGowen's estimate of past and future royalty income totaled $6,274,331.00.

#### 2. Loren Charles Scott[20]

Loren Charles Scott ("Scott") is an economist specializing in the energy sector. He was accepted by this Court as an expert economist. Most of his testimony related to other portions of

---

[18] McGowen testified on April 20, 2021 [Doc. No. 213 pp. 237-286]
[19] This was prior to Baugnies' dismissal, so McGowen's figures should be reduced to reflect the remaining Plaintiffs 4/6 interest.
[20] Scott testified on April 21, 2021 [Doc. No. 214, pp. 153-192]

the case, but he testified that McGowen should have reduced the future royalty income to its present value.

### 3. David Fuller[21]

David Fuller ("Fuller") was called by the defense and was accepted as an expert in financial evaluation. He testified the Plaintiffs would benefit more under the 20% 2004 Matador "gross proceeds royalty" then under a 25% 2008 Petrohawk value "at the wellhead" royalty. However, this Court has since found the 2008 Petrohawk lease royalty also contain a gross proceeds royalty. He also testified that McGowen's future royalty loss of $1,961,491.00 should be discounted at 12% to have a present value of $1,192,627.00.

### B. Damage Computation

In prior rulings,[22] it has been established that the failure of Franklin and Peironnet to receive 25% gross royalty proceeds from the 2008 Petrohawk gross proceeds royalty was the fault of John Moore, an employee of Regions Bank. Instead, Franklin and Peironnet received royalty proceeds of 20% of gross proceeds from the 2004 Matador lease. Therefore, Franklin and Peironnet are entitled to damages in the difference of 5% of past and future royalty proceeds.

### 1. Past Royalty Damages

First, it is noted that McGowen's testimony regarding past royalty proceeds was based upon a five-sixth (5/6) interest by Franklin (2/6), Peironnet (2/6) and Baugnies (1/6). Because Baugnies' claim has been dismissed, the damage claims should be reduced by Baugnies' portion.

McGowen determined lost revenue from 2009 to 2017. He used those figures to calculate the difference between a 20% and 25% royalty. Although the trial took place in April 2021, McGowen did not update the past royalty damage from 2017 to the date of the trial.

---

[21] Fuller testified on April 22, 2021 [Doc. No. 215 pp. 3-47]
[22] [Doc. Nos. 242 and 305]

McGowen testified lost royalties from 2008-2017 totaled $4,312,840.00. This included Baugnies' one-sixth (1/6) interest. Reduction for Baugnies' interest would result in a reduction of 20% (4,312,840.00 x 20% = 862,568.00). That leaves the total past lost royalties claim (using McGowen's figure) at $3,450,272.00 (4,312,840.00 – 862,568.00 = 3,450,272.00).

Plaintiffs seek to update information by a supplemental report of McGowen.[23] As expressed earlier, the trial concluded on April 22, 2021. The only other testimony allowed at the June 2023 hearing was for the limited purpose of the intent of the parties regarding an ambiguous provision in the 2008 Petrohawk lease agreement. Therefore, this Court will not consider supplemental evidence of damages and will make a determination based upon the testimony and evidence presented at the April 2021 trial.

This Court sees no reason not to use McGowen's past royalty figures. They were based on actual production through 2017. Although he did not update his production records before the April 2021 trial, estimated production in 2018 through April 2021 was reflected in McGowen's future royalty analysis.

Therefore, this Court finds past royalty damages to be awarded to Franklin and Peironnet are $3,450,272.00.

### 2. Future Royalty Damages

To determine future royalty damages, McGowen used production history of the wells, examined pressure data of the wells, a performance analysis, and a curve fit analysis for the Haynesville Shale area. McGowen testified future royalties were from 2018 to the anticipated future life of the wells. He estimated future damages for future royalty production at $1,961,491.00.

---

[23] [Px-197, Exh. 7]

McGowen admittedly did not reduce the future amount to its present value. Fuller testified that using a 12% discount, the present value of $1,961,491.00 would be $1,192,627.00. Also, McGowen's figure includes Baugnies' one-sixth (1/6) interest. Taking off Baugnies' interest would reduce the future damage calculation to $954,101.60 (1,192,627.00 x 80% = 954,101.60).

Although future damages are more of an estimate than past damages, this Court will accept it as a fair and reasonable amount. Therefore, future royalty damages awarded to Franklin and Peironnet total $954,101.60.

### 3. Interest

Franklin and Peironnet ask for interest on both past royalty damages from date of judicial demand until date of entry of judgment and ask for interest on future royalty damage from the date of judgment.

Regions argues that interest on future royalty damage should run from date of judgment but interest on past royalty damage should only be awarded on those calculated during the trial and presented as actual damages during the trial, based on the date the amount was due to Plaintiffs.

Both sides agree 28 U.S.C. § 1961 governs post judgment interest. This Court also agrees that post judgment interest will run, in accordance with 28 U.S.C. § 1961 on the award for future damage from the date of entry of the judgment. This Court has considered Plaintiffs' argument that since the trial was held in April 2021, the damages incurred from 2018 to April 2021 should not be part of future damages but past damages. However, Plaintiffs expert (McGowen) did not update the damages for past damages from 2018 to April 2021 at the April 2021 trial. Neither will this Court.

A trial court has discretion to award prejudgment interests *Marine Overseas Services, Inc. v. Crossocean Shipping Co. Inc*, 791 F.2d 1227, 1236 (5th Cir. 1986). Prejudgment interest should

run from the date each item of past damages was incurred. *Farmland Industries, Inc. v. Andrews Transport Co.*, 888 F.2d 1066, 1068 (5th Cir. 1989). This Court will award prejudgment interest on past royalty damages from the date each was incurred. McGowen broke down[24] the amount of past royalty damages by year. As discussed, each should be reduced by 20% due to the dismissal of Baugnies.

| Year | Amount | | | |
|---|---|---|---|---|
| 2010 | 22,506.00 | Reduced by 20% | = | 18,004.80 |
| 2011 | 490,108.00 | " | = | 392,086.40 |
| 2012 | 320,521.00 | " | = | 256,416.80 |
| 2013 | 364,485.00 | " | = | 291,588.00 |
| 2014 | 259,247.00 | " | = | 207,397.60 |
| 2015 | 774,073.00 | " | = | 619,258.40 |
| 2016 | 1,248,831.00 | " | = | 999,064.80 |
| 2017 | 833,069.00 | " | = | 666,455.20 |

In order to fully compensate Plaintiffs, this Court will award prejudgment interest on the above amounts beginning on December 31st of the year the damage was incurred.[25]

### III. CONCLUSION

For the reasons set forth herein, the Court awards post royalty damages to Franklin and Peironnet in the sum of $3,450,272.00 and future royalty damages in the amount of $954,101.60 along with prejudgment and postjudgment interest as set out herein.

MONROE, LOUISIANA, this 5th day of October 2023.

_____
**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**

---

[24] [Doc. No. 213, pp. 263-64]
[25] As an example, for the 2011 award of 392,086.40, prejudgment interest will begin December 31, 2011.